UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:22-CV-581-CRS

DEONTE DOBSON                                                                                          PLAINTIFF

v.

OFFICER COREY SANDERFER, et al.                                                          DEFENDANTS

### OPINION & ORDER

This matter is before the court on defendants Corey Sanderfer, Keyonte Parris, and Juan Ochoa's Rule 12(b)(6) motion to dismiss *pro se* plaintiff Deonte Dobson's Complaint. [DN 10]. For the reasons below, the motion to dismiss will be granted.

I.     Background

This is a 42 U.S.C. § 1983 action. Dobson sued LMDC[1] Officers Sanderfer and Parris and LMDC Sergeant Ochoa in their individual and official capacities, alleging violations of the Eighth and Fourteenth Amendments. On initial screening, the court dismissed all official capacity claims and all individual capacity Eighth Amendment claims but allowed Dobson's Fourteenth Amendment excessive force and due process claims to proceed. [DN 6 at 4]. At the time of the alleged constitutional violations, Dobson was a pretrial detainee, so "his allegations fall under the Fourteenth Amendment" — not the Eighth Amendment. [DN 6 at 4].

The complaint, filed October 31, 2022, alleges that on June 22, 2021, Officer Sanderfer punched Dobson in the face and Officer Parris punched Dobson in the abdomen. [DN 1 at 4]; [DN 1-1 at 18]. Then, Dobson alleges on June 25, 2021, Sergeant Ochoa "conceal[ed] true events that took place" on June 22 by declining to attach a recording of the event to an incident report he prepared. [DN 1 at 4].

---

[1] Louisville Metropolitan Department of Corrections.

Defendants argue that Dobson's claims are barred by the statute of limitations because the complaint reflects that the alleged incidents occurred in June 2021, yet Dobson did not file his complaint until October 2022. Dobson opposes the motion, arguing that the statute of limitations was tolled while he pursued administrative remedies. [DN 17].

## II.    Legal Standard

In deciding a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting all the plaintiff's allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009). Further, "the allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "[A] motion under Rule 12(b)(6), which considers only allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

Where "matters outside the pleadings are presented to and not excluded by the court" a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, when a plaintiff attaches exhibits to his complaint, the attachments become a part of that pleading and may be considered "without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011); FED. R. CIV. P. 10(c). Therefore, the court may consider the attachments to Dobson's Complaint, which include copies of grievances.

III.  Discussion

Defendants' Motion to Dismiss advances one argument: Dobson failed to file his Complaint within the applicable statute of limitations. 42 U.S.C. § 1983 does not provide a statute of limitations, so federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KRS § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that [sic] a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183.

Here, Dobson alleges he was punched in the face by Officer Sanderfer and in the abdomen by Officer Parris and that, just days later, Sergeant Ochoa attempted to conceal the incident. Certainly, Dobson knew of the former immediately after being punched on June 22, 2021. Dobson's complaint reflects that he learned of the latter just days later, on June 25, 2021. For statute of limitations purposes, these serve as the dates upon which Dobson's one-year clock began to run.

The one-year statute of limitations is tolled, however, while exhaustion of prison administrative remedies occurs. *Waters v. Evans*, 105 F. App'x 827, 829 (6th Cir. 2004); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). "The statute of limitations is tolled because a prisoner cannot bring suit in federal court until the administrative remedies at the facility are exhausted and it would be unfair to penalize a prisoner for not bringing his claims during the limitations period, while administrative proceedings were still ongoing." *Gibbson v. Ky. Dep't of Corr.*, No. 3:07-cv-697-CRS, 2009 WL 1247095, at *2 (W.D. Ky. Mar. 5, 2009). Thus, although

the statute of limitations for Dobson's claims began to run on June 22 and June 25, 2021, the clock was tolled while he sought redress through administrative proceedings at the prison.

In the complaint, Dobson states that he "followed every grievance and open records procedure and the [LMDC] facility failed to correct this situation[.]" [DN 1 at 4]. To support his allegation, Dobson attached multiple grievances, "Action Request[s]," and an "Inmate Disciplinary Appeal" form to his complaint. [DN 1-1 at 1–18]. These exhibits to the complaint are part of the pleading, and the court will consider them. *Rondigo, L.L.C.*, 641 F.3d at 680–81.

Dobson filed his first grievance on June 24, 2021 — just two days after the statute of limitations began to run for his claim against Officers Sanderfer and Parris — which stated: "I'm simply grieving C/O Standafer's [sic] use of force and question the training of officers who are to ensure our safety/health over anything else!" [DN 1-1 at 11]. In the "action requested" section, Dobson requested that "proper steps . . . be taken to ensure future safety for not only myself but fellow inmates that may have found themselves in similar situations w/ C/O Standafer [sic]." [DN 1-1 at 11]. LMDC rejected this grievance on the same day, with instructions for Dobson to "please specify the use of force incident, date, shift and officers involved." [DN 1-1 at 11].

Dobson filed a corrected grievance the same day, June 24, 2021, this time specifying the incident date, shift, and officers involved. [DN 1-1 at 15]. The grievance stated: "I'm simply grieving C/O Standafer's [sic] use of force and question the training of officers who are to ensure our safety/health over anything else like the Incident Case # 00047784, Incident Report # 00113730 – Date 6/22/21. Officer Sandifer [sic] was the officer in violation on his decision of use of force of Sandifer [sic] punching me in the face. 3rd shift." [DN 1-1 at 15]. Dobson's "action requested" section mirrors that of his earlier grievance. [DN 1-1 at 15]. The grievance was signed by an LMDC grievance counselor on July 2, 2021 and again on August 23, 2021. [DN 1-1 at 15].

Dobson likewise signed the grievance again on August 23, 2021. While the "recommendation" section is blank, the letter "u" appears in the lower right corner of the form. [DN 1-1 at 15]. Defendants, employees of LMDC, assert in reply that the letter "u" indicates that the grievance was "unfounded." [DN 18 at 2]. Whether or not that is true, Dobson did not check the box that reads: "I wish to appeal this recommendation to the Director." [DN 1-1 at 15]. Thus, the grievance was administratively resolved on August 23, 2021.

Dobson filed his second grievance on June 25, 2021 — the same day Dobson learned of Sergeant Ochoa's incident report. The grievance stated: "On 6/25/2021 I received incident reports regarding incident that took place on 6/22/2021 where I was assaulted by Officer Sanderfer and by Institutional Policy and procedure the EOR should be complete. There was no DVR attached to report by Sgt. Ochoa. This is an attempt to conceal true events that took place." [DN 1-1 at 16]. In the "action requested" section, Dobson requested "a full investigation by PSU and to have DVR copied and recorded and attached to report." [DN 1-1 at 16]. This grievance was signed by an LMDC grievance counselor on July 1, 2021, and by an LMDC "Supervisor/Staff" on July 12, 2021. On July 26, 2021, Dobson and an LMDC grievance counselor once again signed the grievance. The "recommendation" section states: "Per PSU Lt. Redman, an inmate cannot request a PSU investigation and any video and/or reports must be obtained through open records." [DN 1-1 at 16]. Dobson did not check the box that reads: "I wish to appeal this recommendation to the Director." [DN 1-1 at 16]. Thus, the grievance was administratively resolved on July 26, 2021.

Dobson filed his third, and final, grievance on July 12, 2021, which stated: "I've yet to see a grievance counselor since I was moved up to this floor. The incident I'm grieving about was with C/O Sandifer. While I was downstairs, my due process has obviously been either disregarded or

violated. Along with that grievance I filed over 1 month ago I also asked specifically for the address in which the grievants were sent to so I could follow up." [DN 1-1 at 4]. In the "action requested" section, Dobson requested "[f]or Due Process to be followed as policy states per LMDC." [DN 1-1 at 4]. LMDC responded to the grievance on an undisclosed date. [DN 1-1 at 4]. In the "recommendation" section, it is written: "not sure what address you are in need of. The grievance counselors work in this facility. Your grievance was received once it has been answered it will be returned back to you." [DN 1-1 at 4]. Also, it is written at the top of the grievance form that "[t]his is not the procedure when inquiring about the status of your grievance." [DN 1-1 at 4]. This time, Dobson did check the box that reads, "I wish to appeal this recommendation to the Director," however, it is unsigned by Dobson. [DN 1-1 at 4]. So it is unclear whether Dobson proceeded with his appeal of the decision, a preliminary step of which requires Dobson to "forward this form to the Director" within "five (5) working days." [DN 1-1 at 4]. Nonetheless, this 'grievance' simply sought information about the status of Dobson's first grievance, which had yet to be resolved. As highlighted above, however, that grievance was later resolved on August 23, 2021. *See* [DN 1-1 at 15]. Thus, to the extent this request was a 'grievance,' it was rendered moot after the earlier grievance was resolved.

Dobson also attached an "Inmate Disciplinary Appeal" form to his complaint, which he submitted on June 29, 2021. [DN 1-1 at 1]. In the "Inmate Comment" section, Dobson wrote the following:

> After talking w/ C/O Kessinger . . . I explained to him in detail of my intention to EXPOSE this nefarious set of actions that C/O Standifer [sic] continuously demonstrates upon the jail population. 'See incident reports involving C/O Standifer.' [sic] I would also like to be understood that this document is the process in which I must go threw [sic] to exhaust 'all remedies.' Pay attention to the <u>dates</u> on the <u>disciplinary report</u> and it will clearly point out discrepancies which in essence helps to further prove along with so said [ineligible] officer Standifer's [sic] negligence and just how much honor and pride is put into his job.

Page **6** of **8**

[DN 1-1 at 1] (original emphasis). The Deputy Director of Programs upheld the disciplinary decision against Dobson after reviewing "the Disciplinary Report, Investigation, and [Disciplinary] Hearing." [DN 1-1 at 1]. The Deputy Director signed the decision on July 15, 2021. [DN 1-1 at 1].

There are no documents — whether grievances, action requests, or otherwise — attached to Dobson's complaint which reflect a date later than August 23, 2021. That was the date Dobson's grievance against Officer Sanderfer, which centered on an alleged Fourteenth Amendment excessive force violation, was administratively resolved. Dobson did not appeal that recommendation. Dobson filed that grievance on June 24, 2021 — just two days after he was allegedly punched in the face by Officer Sanderfer. The one-year statute of limitations was tolled between June 24 and August 23, 2021, while Dobson pursued an administrative remedy. So as for Dobson's Fourteenth Amendment excessive force claim against Officer Sanderfer, Dobson had 363 days from August 24, 2021 to place his complaint in the prison mailbox system. The prisoner mailbox rule controls the date of filing for statute of limitations purposes. Under this rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison official for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

Dobson filed a grievance against Sergeant Ochoa on the very day that he received Sergeant Ochoa's incident report — June 25, 2021. That grievance was resolved on July 26, 2021. Dobson did not appeal the recommendation. Thus, the one-year statute of limitations was tolled between June 25 and July 12, 2021 while Dobson pursued an administrative remedy. So as for Dobson's Fourteenth Amendment claim against Sergeant Ochoa, Dobson had 365 days from July 13, 2021 to place his complaint in the prison mailbox system. *Brand*, 526 F.3d at 925.

Notably, Dobson did not file a grievance against Officer Parris for his alleged Fourteenth Amendment excessive force violation. Thus, no tolling would apply to Dobson's claim against Parris. So, as to Parris, Dobson had 365 days from June 24, 2021 to place his complaint in the prison mailbox system. *Id.*

To be timely filed, Dobson's complaint was due August 22, 2022 as to his claim against Officer Sanderfer, July 14, 2022 as to his claim against Sergeant Ochoa, and June 25, 2022 as to his claim against Officer Parris. But Dobson did not place his complaint in the prison mailbox system until October 31, 2022. [DN 1 at 6] ("I hereby certify that a copy of this complaint was delivered to the prisoner mail system for mailing on 10/31/22."). Thus, Dobson was more than two months late as to Officer Sanderfer, more than three months late as to Sergeant Ochoa, and more than four months late as to Officer Parris, so his claims are time barred. *Collard*, 896 F.2d at 182; *Brand*, 526 F.3d at 925.

IV.   Conclusion

Even considering the one-year statute of limitations period as tolled while Dobson's grievances were pending at LMDC, more than one year passed between the denial of his grievances and the filing of the complaint against Defendants. Thus, Defendants are correct; Dobson's claims are barred by the one-year statute of limitations. Therefore, the court concludes that Defendants' motion to dismiss [DN 10] must be and hereby is **GRANTED**. This action is **DISMISSED WITH PREJUDICE**. This matter shall be **STRIKEN** from the court's active docket. There being no delay in its entry, this is a final order. The court further **CERTIFIES** that an appeal of this action would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

November 27, 2023



Charles R. Simpson III, Senior Judge
United States District Court